UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| ARTHUR JERNIGAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:18-CV-0022-ERW |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the application of Arthur Jernigan ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq.* Plaintiff has filed a brief in support of the Complaint (ECF 20) and Defendant has filed a brief in support of the Answer (ECF 28).

**I. PROCEDURAL HISTORY**

Plaintiff filed his applications for DIB under Title II of the Social Security Act on December 5, 2014 (Tr. 165-171). Plaintiff was initially denied relief on February 5, 2015, and on March 4, 2015, he filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 107-113). After a hearing, by a decision dated January 3, 2017, the ALJ found Plaintiff was not disabled (Tr. 46-54). Plaintiff filed a *Request for Review of Hearing Decision* on February 28, 2017 (Tr. 162-163). On November 9, 2017, the Appeals Council denied Plaintiff's request for review (Tr. 1-6). Plaintiff appealed to the United States District Court for the Eastern District of Missouri on January 5, 2018 (ECF 1). As such, the ALJ's decision stands as the final decision of the Commissioner.

1

## II. DECISION OF THE ALJ

The ALJ determined Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2015, and Plaintiff has not engaged in substantial gainful activity since June 20, 2012, the alleged onset date of his disability (Tr. 48).

The ALJ found Plaintiff has the severe impairments of history of lumbar fusion[1] at L4-5 and L5-S1, bilateral foraminal narrowing[2] in the lumbar spine, lumbar radiculopathy[3], history of total left knee arthroplasty[4], and obesity (Tr. 48). The ALJ found no impairment or combination of impairments which meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 48).

The ALJ conducted a hearing with Plaintiff, Plaintiff's counsel, and Debra Determan, a vocational expert, on November 10, 2016 (Tr. 68). At the hearing, Plaintiff testified he was born in 1968, completed high school through the tenth grade, and does not have his GED (Tr. 67-68). Plaintiff worked for Stafford Energy, a temp service company, when he was terminated on July 13, 2012, following a work-place accident (Tr. 68-69). Plaintiff has not attempted to find work since his termination stating, he "wasn't able" to (Tr. 69).

Plaintiff testified he must elevate his legs "up to three to four times in a day, chest high, and then [he] has to ice them two to three times a day" (Tr. 69). Plaintiff had total knee replacement surgery on his right leg, and he testified he is only able to bend his knee 70 degrees instead of the necessary 100 degrees (Tr. 69). Plaintiff has "stabbing, sharp pains at night time"

---

[1] Lumbar fusion is a surgical procedure where bones in the spine are fused together so they heal into a single, solid bone. This procedure is done to eliminate painful motion or restore stability to the spine.
[2] Bilateral foraminal narrowing is the restriction of the openings on either of a person's spine where the nerve roots pass to and from the spinal cord. This condition can cause symptoms such as pain along the length of a compressed nerve, localized pain, muscle weakness, numbness, or tingling.
[3] Lumbar radiculopathy is also referred to as sciatica, and occurs when a spinal nerve root becomes pinched or damaged. Symptoms include pain, weakness, numbness, and tingling.
[4] Arthroplasty is more commonly known as a total knee replacement, where fragments of the knee joint are replaced with artificial elements.

in his lower back, which only allows him to sleep for about two hours at a time (Tr. 70). When Plaintiff sits for approximately thirty minutes, he becomes "so stiff" it is difficult for him to move his knee (Tr. 73). Plaintiff suffers from knee swelling, and his legs give out on him from time-to-time (Tr. 80). Plaintiff must lay flat two to three times a day, about every other day, to relieve pain (Tr. 80-81) Plaintiff testified he is not able to play with his grandchildren because he does not want to twist or turn, and affect the screws in his spine (Tr. 73).

Plaintiff is 5'8" and weighed 286 pounds in 2012, 350 pounds in 2013, and 305 pounds at the time of the hearing in 2016 (Tr. 74). Plaintiff testified he walks on a treadmill at a very slow pace for about thirty minutes, three to four times a week (Tr. 75). Plaintiff has to hold onto the side rails of the treadmill when he walks for stability (Tr. 75). Additionally, Plaintiff walks with a doctor-prescribed cane when he is outside his home (Tr. 78).

When asked to describe his back pain, Plaintiff testified when he takes his medication, his back pain is usually at a six or seven on a ten point scale (Tr. 75). When Plaintiff does not take his pain medication, his pain can be as bad as eight and a half, or nine, every day (Tr. 75). Plaintiff testified when he is on his pain medication, the pain in his left knee is about an eight, and the pain stems primarily from his difficulty bending his knee (Tr. 76). Plaintiff also suffers from hip pain following the removal of part of his hip bone which was used in his spinal fusion (Tr. 78-79). Plaintiff testified his pain and stiffness can be so bad, at times, his wife has to help him off the couch (Tr. 79-80).

Plaintiff does not have a primary care physician, and does not regularly visit the doctor, because he cannot afford the physician costs (Tr. 76). Plaintiff also testified he had an incident with his primary care provider, which led to the termination of the relationship, when he testified positive for "some drugs" (Tr. 77).

Plaintiff worked as a porter and a detailer cleaning cars at Jerry Ackerman Toyota in 2006 (Tr. 70-71). From 2007 to 2008, Plaintiff worked for Becky's Carpet, loading and unloading carpet padding from a truck (Tr. 71). This position required him to lift anywhere from 20 to 120 pounds at any given time (Tr. 71-72). Plaintiff's position at Becky's Carpet ended when the company went out of business (Tr. 72).

The vocational expert, Debra Determan, testified Plaintiff had prior work as a material handler, a semiskilled position, which requires very heavy exertion (Tr. 83). Plaintiff also worked as an automobile detailer, and car porter, which are unskilled positions and required medium exertion (Tr. 83-84). Ms. Determan also testified Plaintiff is not able to perform any of his past work; however, he could do sedentary work, including document preparer, call out operator, and telephone quotation clerk (Tr. 84-85).

After considering the entire record, including Plaintiff's testimony, the ALJ determined Plaintiff has the Residual Functioning Capacity ("RFC") to perform light work. He could stand and/or walk for about two hours, and sit for up to six hours, in an eight-hour workday with normal breaks (Tr. 49). Plaintiff can never climb ladders, ropes, or scaffolds (Tr. 49). He can occasionally climb ramps and stairs, balance[5], stoop, kneel, crouch, and crawl (Tr. 49). Plaintiff cannot be exposed to excessive vibration, unprotected heights, or hazardous machinery (Tr. 49).

The ALJ found Plaintiff is unable to perform any past relevant work[6] (Tr. 52). The ALJ also found there are jobs, which exist in significant numbers in the national economy, as noted above. The ALJ concluded Plaintiff was "not disabled" (Tr. 47).

---

[5] Balance is defined as a person's ability to maintain body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces.
[6] Plaintiff's past relevant work including work as a porter and detailer for a car dealership as well as loading and carpet padding from trucks (Tr. 70-72).

Plaintiff appeals, arguing first, the ALJ failed to afford adequate weight to Plaintiff's treating physician, Dr. Keith Wilkey, and second, to a report by Delores Gonazalez, a vocational expert. Plaintiff asseverates these errors warrant a change in the ALJ's decision, and his claims were erroneously denied review by the Appeals Counsel.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner must follow a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, first the claimant cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two, only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of these impairments, then the claimant is *per se* disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past to determine if the claimant can perform any past relevant work. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy which can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3.

"The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed, if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record *de novo*. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough, so a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision, which is supported by substantial evidence, is not subject to reversal, merely because substantial evidence may also support an opposite conclusion, or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In his appeal of the ALJ's decision, Plaintiff argues first, the ALJ failed to afford adequate weight to Plaintiff's treating physician, Dr. Keith Wilkeyy, and second, a report by

7

Delores Gonazalez, a vocational expert. He believes this warrants a change in the ALJ's decision, and he maintains he was erroneously denied review by the Appeals Counsel.

### A. Plaintiff's Treating Physician

Plaintiff contends the ALJ erred when he failed to properly consider the medical opinion evidence of Plaintiff's treating physician, Dr. Wilkey. Medical opinions are given weight according to the guidelines outlined in the Title 20 of the Code of Federal Regulations for claims filed before March 27, 2017. *See* 20 C.F.R § 404.1527. More weight is given to medical opinions from treating sources. *Id.* If a "treating source's medical opinion on the issue(s) of the nature and severity of [an] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [Plaintiffs] case record, we will give it controlling weight." 20 C.F.R. § 404.1527. "A treating physician's opinion, however, 'does not automatically control or obviate the need to evaluate the record as a whole.'" *Nowling v. Colvin*, 813 F.3d 1110, 1122–23 (8th Cir. 2016) *quoting Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2001). An ALJ is "not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) *citing Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007).

"If a treating physician's opinion is not given controlling weight, then the ALJ must review various factors to determine how much weight is appropriate." *McRoberts v. Berryhill*, No. 4:17 CV 1447, 2018 WL 2335746, at *9 (E.D. Mo. May 23, 2018) *citing Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016). If the opinion is not given controlling weight, factors which must be considered include length of treatment relationship and frequency of examination, nature and extent of the treatment relationship, supportability, consistency, specialization and other

factors brought to the attention of the ALJ. 20 C.F.R. § 404.1527 (c). The ALJ is required to "give good reasons" for the weight given to a treating sources medical opinion. 20 C.F.R. § 404.1527(c)(2).

In his opinion, the ALJ gave *some* weight to the opinion of the State agency medical consultant who stated Plaintiff could perform a range of light work which included standing and walking for two hours (Tr. 51). The opinion was only afforded *some* weight because the rest of the medical evidence showed Plaintiff had additional non-exertional limitations which were not addressed by the State agency medical consultant, including restricting Plaintiff's ability to climb ramps and stairs, as well prohibiting Plaintiff's exposure to vibration, unprotected heights, and hazardous machinery (Tr. 51).

With regards to Plaintiff's ability to lift weight, the ALJ afforded *significant* weight to opinions from both Dr. Peter Anderson and Dr. Keith Wilkey (Tr. 52). First, Dr. Anderson found Plaintiff was able to return to work as of January 17, 2013, but he was only able to lift up to 40 pounds (Tr. 341-342). As of March 26, 2013, Dr. Wilkey found Plaintiff was able to work, not around heavy equipment, and he was limited to lifting 20 pounds (Tr. 371). Dr. Wilkey also found Plaintiff was limited to lifting 30 pounds in the year following his lumbar fusion surgery in January 2015 (Tr. 279-280).

The ALJ afforded *little* weight to Dr. Wilkey's February 2015 opinion, where he concluded Plaintiff is not employable because he must lay down a few times per day to relieve his back pain (Tr. 382). *Little* weight was afforded because the opinion was not consistent with other medical evidence showing Plaintiff had actually improved his functionality following his lumbar spine surgery (Tr. 52).

9

The ALJ afforded *significant* weight to Dr. Matthew Bradley's October 5, 2015 opinion, which stated Plaintiff could return to work with no restrictions on his left knee (Tr. 410).

With regards to Dr. Wilkey's other medical opinions, *some* weight is afforded to the extent they were consistent with Plaintiff's RFC (Tr. 52). Dr. Wilkey has an extensive history treating Plaintiff, and his opinions vary widely with regards to Plaintiff's ability to lift and carry weight, as well as bend, twist, stoop, push, pull, sit, stand and drive. The ALJ stated Dr. Wilkey's opinions are only afforded *some* weight because, given the rest of the medical evidence. The ALJ found Plaintiff was limited in his ability to do work, and accordingly, limited him to a range of light work and other appropriate limitations given his continued defects in functioning (Tr. 52).

Plaintiff argues the ALJ erred by affording Dr. Wilkey's February 2015 opinion *little* weight without appropriately considering the factors which must be evaluated when a treating physician's opinion is not given controlling weight. *See* 20 C.F.R. § 404.1527 (c). The ALJ is required to "give good reasons" for the weight given to a treating sources medical opinion. 20 C.F.R. § 404.1527(c)(2). In the present case, the ALJ did give good reasons for choosing to discount Dr. Wilkey's opinions, namely, they conflict with the other medical evidence in the record, including evidence from Dr. Wilkey himself, which indicates Plaintiff had improved the functioning in his back following surgery. "[W]here the treating physician's opinions are themselves inconsistent, they should be accorded less deference." *Cruze v. Chater*, 85 F.3d 1320, 1325 (8th Cir. 1996). Dr. Wilkey presents inconsistent medical opinions a month apart regarding Plaintiff's ability to work, and those inconsistent opinions are not consistent with the rest of the medical evidence. Accordingly, the ALJ provided good reasons to discount Dr. Wilkey's medical opinions and afford them *little* weight when they were inconsistent with the medical record a whole.

In Plaintiff's brief, he points to specific evidence which supports a different RFC determination than the ALJ's conclusion in that regard; however, a "decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). The ALJ's determination to afford differing amounts of weight to Dr. Wilkey's opinion is supported by substantial evidence, because he gave good reasons for his determinations. The ALJ's RFC determination, including limitations on Plaintiff's ability to perform certain types of work, based on medical opinions, and the testimony of Plaintiff, is supported by substantial evidence.

### B. Additional Vocational Expert Evidence

On November 9, 2017, Plaintiff was denied his request for review of the ALJ's decision dated January 3, 2017, by the Appeals Council (Tr. 1-3). The denial letter notes Plaintiff submitted 28 pages of additional records from Gonzalez & Associates dated November 11, 2016, which were reviewed by the Appeals Council (Tr. 2). The following record is significant, pertaining to review of the ALJ's decision. On November 10, 2016, the ALJ conducted Plaintiff's hearing where the following conversation occurred:

> ALJ: Is the record complete Mr. Solomon?
>
> ATTY: To the best of my knowledge it is, Your Honor. One thing I guess I did. Mr. Jernigan recently had an outside vocational evaluation under his work comp case. I don't have that report yet. I don't know if it's relevant or if it's [dispositive]. Again, I think I was supposed to receive it sometime this week but I don't have it so I can't tell you if that [is] significant or relevant to the hearing.
>
> ALJ: Have you seen it?
>
> ATTY: I have not, no.
>
> ALJ: Were you the counsel for that proceeding?

> ATTY: It was not a proceeding. It was just a vocational evaluation by a vocational counselor so I'm expecting a report from –
>
> ALJ: So it's not going to be medical findings. It's just going to be –
>
> ATTY: It will just be a vocational opinion and probably a summary of the medical.
>
> ALJ: I'll leave that up to you as to whether you think it's relevant. If you're asking the record to remain open. I'll certainly consider t[h]at.
>
> ATTY: At this time I'm not asking that the record be left open (Tr. 65).

Plaintiff's counsel indicated the report would only be a "vocational opinion" and a "summary of the medical" evidence, not medical findings. The aforementioned report was dated the day after the ALJ's hearing; however, there is no indication Plaintiff attempted to supplement the ALJ's record following the conclusion of the hearing. Plaintiff now contends the ALJ did not have an opportunity to review the additional report which he contends "provides additional analysis of Plaintiff's [RFC] when considering his pain complaints" (ECF 20 at 14). Plaintiff is seeking remand so the ALJ can "fully weight the evidence of record," including this additional report (ECF 20 at 14).

The Gonzalez & Associates report, dated November 11, 2016, is "part of the administrative record on appeal, because the Appeals Council considered [it] when it decided whether to review the ALJ's decision." *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007) *citing Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000). When "the Appeals Council considers new evidence but denies review, [the reviewing Court] must determine whether the ALJ's decision was supported by substantial evidence on the record as a whole, including the new evidence." *Id.*

The Appeals Council, under the *Social Security Administration Final Rule*, will review a case if "the Appeals Council receives additional evidence that is new, material, and relates to the

period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." *Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process*, 81 FR 90987-01 (December 16, 2016). In their denial, the Appeals Council noted the Gonzalez & Associates report "does not relate to the period at issue" because the ALJ decided the case through September 30, 2017, and "it does not affect the decision about whether [Plaintiff] was disabled beginning on or before September 30, 2017" (Tr. 2).

Plaintiff alleges disability beginning on June 20, 2012 (Tr. 46). The relevant time period in this case, therefore, is June 20, 2012, through the ALJ's decision on January 3, 2017. The Gonzalez & Associates Report is based on an interview done with Plaintiff on October 14, 2016, and his medical records submitted prior to when the final report was issued on November 11, 2016 (Tr. 15). The Gonzalez & Associates Report does relate to the period on or before the hearing decision, it was considered by the Appeals Council, and there is no reasonable probability the additional evidence would change the outcome of the decision. Substantial evidence supports the ALJ's determination.

Notably, the Gonzalez report does not contain any new medical evidence for the ALJ to review, only an additional vocational opinion on Plaintiff's ability to find employment. There is no indication Ms. Gonzalez was provided additional medical evidence which was not provided to the ALJ. Plaintiff's counsel stated in the hearing the report was forthcoming, but he did not ask the ALJ to keep the record open, so the ALJ could consider the Gonzalez & Associates Report. The report was created using exactly the same information available to the ALJ, both in the form of medical evidence, medical records, and Plaintiff's own testimony. The additional report merely comes to a different conclusion than the ALJ, regarding Plaintiff's RFC, with exactly the

same medical evidence. Accordingly, the ALJ need not consider this additional report when it does not add any new medical evidence or testimony from the Plaintiff about his abilities and limitations. The Gonzalez & Associates Report does not change the weight of the evidence in the record, and only serves as an additional summary of Plaintiff's medical records with conclusory statements regarding Plaintiff's ability to obtain work.

Accordingly, the ALJ's decision was supported by substantial evidence on the record as a whole, and the new Gonzalez & Associates report does not provide additional evidence which is new, material. It does not create a reasonable probability the additional evidence would change the outcome of the decision.

**V. CONCLUSION**

For the reasons set forth above, the Court finds substantial evidence on the record, as a whole, supports the Commissioner's decision Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 28th day of March, 2019.

_____
**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**